UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

REGINALD WILSON,

               Petitioner,

  - against -

ADA PEREZ,
Superintendent of the Downstate
Correctional Facility,

             Respondent.

------------------------------------------------ X

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:** _____
**DATE FILED:** _____

**OPINION AND ORDER**

**11-cv-4831 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Petitioner Reginald Wilson brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his state court conviction following a jury trial in New York Supreme Court, Westchester County.[1]  After being convicted of Burglary in the Second Degree,[2] Grand Larceny

---

[1]    *See* Amended Petition for a Writ of Habeas Corpus ("Am. Pet.") at i; Amended Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem.") at 1.

[2]    *See* New York Penal Law § 140.25.

1

in the Fourth Degree,[3] Criminal Possession of Stolen Property in the Fourth

Degree,[4] Possession of Burglar's Tools,[5] and Obstructing Governmental

Administration in the Second Degree,[6] Wilson was sentenced to concurrent terms

of sixteen years-to-life, two-to-four years, two-to-four years, one year, and one

year, respectively.[7]

On November 2, 2011, Wilson filed the instant Amended Petition,

challenging his conviction on the following grounds:  (1) the prosecutor failed to

disclose *Brady* material; (2) the trial court erred in allowing uncharged crimes and

undisclosed evidence to be referenced by the prosecution and viewed by the jury;

(3) the state courts failed to render a full and fair litigation of Wilson's Fourth

Amendment claims; (4) the police officers arrested Wilson outside of the

geographic jurisdiction of their department; and (5) the materials adduced at trial

were procured in violation of Wilson's constitutional rights.[8]  For the following

---

[3]    *See id.* § 155.30.

[4]    *See id.* § 165.45.

[5]    *See id.* § 140.35.

[6]    *See id.* § 195.05.

[7]    *See* Am. Pet. at i.

[8]    Wilson filed his original petition on June 29, 2011.  By a February 16, 2012 Order, the Court accepted the Amended Petition and deemed it operative. *See* Dkt. 23.

reasons, the Amended Petition is denied.

## II.     BACKGROUND

### A.     The Offending Conduct

The crimes underlying Wilson's conviction occurred on June 30, 2005.[9]  At that time, Wilson – a suspect in a number of area burglaries – was under the surveillance of the Harrison Police Department, which tracked him using a global positioning ("GPS") device that had been placed on his car pursuant to a court order.[10]  The GPS device revealed that Wilson, who lived in Queens, was driving back and forth along the same small road in Scarsdale, New York for about fifteen minutes.[11]  Wilson then drove to Rockledge Road in nearby Greenburgh.[12]  In response, two Harrison detectives drove to Rockledge Road, where they observed Wilson's unoccupied car parked outside of an apartment complex.[13]  Ten minutes later, one of the detectives watched Wilson, empty-handed, walk from one cluster of apartment buildings to another.[14]  Shortly thereafter, the detective saw

---

[9]     *See* Opp. Mem. at 2.

[10]     *See id.*

[11]     *See id.*

[12]     *See id.*

[13]     *See id.*

[14]     *See id.*

Wilson emerge from the second cluster of buildings carrying a black bag with gold lettering that read "MGM."[15]  Wilson put the bag in his car and drove away.[16]

One of the detectives pursued him and notified the Greenburgh police department, which dispatched its own detective and officer to follow Wilson.[17] Shortly thereafter, a Greenburgh police officer pulled Wilson over and noticed the MGM bag on the front seat.[18]  According to the officer, because Wilson repeatedly refused to provide his license and registration or step out of the car, the officer opened the driver's side door and removed Wilson from the car.[19]  A detective then patted down Wilson and found a pair of lined leather gloves in his front pants pocket.[20]  Inside the MGM bag, he found a laptop computer with the name "Ivette Matias" written in marker on the bottom.[21]  The bag also contained jewelry and

---

[15]     *See id.*

[16]     *See id.*

[17]     *See id.* at 3.

[18]     *See id.*

[19]     *See id.*

[20]     *See id.* at 4.

[21]     *See id.*

4

several coins.[22]  On the floor of the car, the police found a pair of vice grips.[23]

Wilson was placed under arrest, and after his car was impounded, an inventory

search revealed a suitcase full of sunglasses in the trunk, as well as a camcorder

that had been reported stolen nine days earlier.[24]

### B.    Procedural History

Prior to trial, the court held a two-day hearing to determine the

admissibility of the evidence obtained from the stop and search of Wilson's car.[25]

The court ruled in favor of the prosecution, which offered the laptop computer,

jewelry, coins, and MGM bag into evidence at trial without objection by Wilson.[26]

On April 4, 2007, Wilson was convicted by a jury of second degree burglary,

fourth degree grand larceny, fourth degree criminal possession of stolen property,

second degree obstructing governmental administration, and possession of

---

[22]    *See id.*  Matias later identified the bag and its contents as hers.
Shortly after Wilson's arrest, police gained entry to her apartment, at the complex
where Wilson had been observed, and found it ransacked.  A detective who
specialized in investigating burglaries noticed that there was a substantial gap
between the front door of Matias' apartment and the door frame and, in testing it,
was able to pick the lock in a couple of seconds by slipping a credit card between
the door frame and the lock.  *See id.*

[23]    *See id.*

[24]    *See id.*

[25]    *See id.* at 5.

[26]    *See id.* at 7.

burglar's tools.[27]  Following the trial, Wilson moved pro se to set aside his verdict

pursuant to article 330.30 of New York Criminal Procedure Law ("CPL") on

Fourth Amendment grounds.[28]  The court denied his motion, noting that his claim

of lack of probable cause was "not preserved for appellate review and was properly

denied on the merits at the pre-trial hearing."[29]  The judgment of conviction was

entered on July 6, 2007.[30]

Wilson appealed his conviction to the Appellate Division, Second

Department, raising the following claims:  (1) the stop of his vehicle violated his

Fourth Amendment rights; (2) the trial court erred in allowing uncharged crimes

and undisclosed evidence to be referenced by the prosecution and viewed by the

jury; (3) the prosecutor failed to disclose *Brady* material; and (4) the trial court

improperly sentenced Wilson as a persistent felony offender.[31]  On March 1, 2011,

---

[27]     *See id.* at 1.

[28]     *See id.*

[29]     *Id.*

[30]     *See id.*

[31]     *See* Am. Pet. at ii.  Wilson also raised these claims on a pro se motion
to vacate the judgment pursuant to CPL § 440, which was denied on February 22,
2010.  *See id.*

6

the Appellate Division unanimously affirmed Wilson's conviction.[32]  On May 20,

2011, his request for leave to appeal to the Court of Appeals was denied.[33]

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court

may not grant a writ of habeas corpus to a prisoner in custody pursuant to the

judgment of a state court with respect to any claim, unless the state court's

adjudication on the merits of the claim: "(1) was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States;"[34] or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."[35]

A state-court decision is contrary to clearly established federal law, as

determined by the Supreme Court, in the following two instances:

---

[32]     *See People v. Wilson*, 82 A.D.3d 797 (2d Dep't 2011); Opp. Mem. at 1.

[33]     *See People v. Wilson*, 16 N.Y.3d 901 (2011); Opp. Mem. at 1.

[34]     28 U.S.C. § 2254(d)(1).

[35]     *Id.* § 2254(d)(2).

First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[36]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

[A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[37]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[38] This standard "'falls

---

[36]    *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[37]    *Id.* at 407.

[38]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review")

8

somewhere between merely erroneous and unreasonable to all reasonable

jurists.'"[39]   While the test requires "'[s]ome increment of incorrectness beyond

error, . . . the increment need not be great; otherwise habeas relief would be limited

to state court decisions so far off the mark as to suggest judicial incompetence.'"[40]

Furthermore, section 2254(d) applies to a defendant's habeas petition even where

the state court order does not include an explanation of its reasoning.[41]

> Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be
> met by showing there was no reasonable basis for the
> state court to deny relief.  This is so whether or not the
> state court reveals which of the elements in a multipart
> claim it found insufficient, for [section] 2254(d) applies
> when a "claim," not a component of one, has been
> adjudicated.[42]

--------

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[39]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[40]     *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[41]     *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[42]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[43]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[44]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[45]

### B.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[46]  Even if the state court alternatively rules on the merits of the federal claim, federal habeas review is precluded if an adequate and independent state ground would bar the claim in state

---

[43]    *See id.*

[44]    *Id.* at 99.

[45]    *See* 28 U.S.C. § 2254(e)(1).

[46]    *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

court.[47]  Federal habeas review of procedurally barred claims is foreclosed unless

the prisoner can demonstrate either (1) "'cause for the default and actual

prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental

miscarriage of justice.'"[48]  To show cause for a default, a prisoner must put forth

some objective factor, external to the defense, explaining why the claim was not

previously raised.[49]  The Supreme Court has provided little guidance as to what

constitutes "prejudice," but it can be inferred that prejudice is shown when the

claim, if proven, would bear on the petitioner's guilt or punishment.[50]  The

fundamental miscarriage of justice exception to the procedural bar rule is available

only upon a showing of actual innocence.[51]  Finally, a habeas petitioner may not

---

[47]     *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

[48]     *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

[49]     *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[50]     *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

[51]     *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  If such claims would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[52]

### C. *Stone v. Powell* Doctrine

In *Stone v. Powell*, the Supreme Court held that a federal habeas petitioner may only bring a Fourth Amendment exclusionary-rule claim to challenge a state conviction if there has been no opportunity for full and fair litigation of the claim in the state courts.[53]  Federal courts can review a Fourth Amendment claim in a section 2254 petition

> in only one of two instances:  (a) if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.[54]

### D. State Law and Evidentiary Errors

As a general matter, "[f]ederal habeas relief does not lie for errors of

---

[52]    *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[53]    *See* 428 U.S. 465, 482 (1976).

[54]    *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citation omitted).

state law."[55]  The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[56]  "A federal court examining a habeas corpus petition does not have jurisdiction to interpret whether the state courts correctly applied state law."[57]

Similarly, "erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus."[58]  A writ of habeas corpus would only issue where an erroneous state evidentiary ruling "deprived [petitioner] of a *fundamentally fair* trial."[59]

## IV.   DISCUSSION

### A.   Wilson's Claims

#### 1.   The Litigation of Wilson's Fourth Amendment Claims (Grounds 3 and 5)

To overcome the *Stone v. Powell* bar, Wilson must demonstrate that

---

[55]     *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[56]     *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

[57]     *Sutton v. Herbert*, 39 F. Supp. 2d 335, 338 (S.D.N.Y. 1999) (citing *Estelle*, 502 U.S. at 71-72).

[58]     *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988).

[59]     *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973)).

he was denied a fair and full opportunity to litigate his Fourth Amendment claims. He has not done so, nor could he.[60]  The state courts provided Wilson with several avenues to redress these claims, and he took advantage of all of them, albeit in a losing effort.  After a two-day suppression hearing, the trial court determined that there was "abundant probable cause" to issue the GPS warrants, and that there was reasonable suspicion to stop Wilson's car and seize items found in it.[61]  Wilson repeated his Fourth Amendment claims in his CPL 330.30 motion, which the trial court also denied.[62]  Yet another denial of his subsequent CPL 440.10 motion completed the trial court strikeout.[63]  He fared no better in the Appellate Division, which denied his Fourth Amendment claims as unpreserved and held that they lacked merit.[64]  Finally, his request for leave to appeal to the Court of Appeals was

---

[60]    In arguing that he was denied a fair opportunity to litigate his claims in the state courts, Wilson complains principally that the state court rulings "misapplied the law," thus rendering unfair decisions.  Memorandum of Law in Support of Reginald Wilson's Petition for a Writ of Habeas Corpus ("Pet. Mem.") at 11.  This is exactly the type of argument foreclosed by *Stone v. Powell* .

[61]    Opp. Mem. at 6.

[62]    *See id.* at 7.

[63]    *See id.*

[64]    *See Wilson*, 82 A.D.3d at 798-800.  The lack of preservation alone constitutes an independent and adequate ground for the denial of relief.  *See Garvey v. Duncan*, 485 F.3d 709, 711 (2d Cir. 2007) (holding that New York's contemporaneous objection rule is a "firmly established and regularly followed state law" and thus qualifies as an "independent and adequate state law ground").

denied.

Accordingly, Wilson has not proven that he was denied a fair and full opportunity to litigate his claims, much less that there was an "unconscionable breakdown" in the state court system.[65]  To the contrary, he had five chances to make his case in the state courts, and he lost each time.  His attempt to relitigate these claims in a federal habeas petition is therefore denied.[66]

## 2.    Failure to Disclose *Brady* Material (Ground 1)

Wilson contends that had the prosecution timely disclosed a computer printout of a New York State Police Information Network ("NYSPIN") records check, a jury would have acquitted him on the charge of obstructing governmental administration.  According to Wilson, the printout proves that he complied with a request to produce his driver's license when he was pulled over by the police.[67]  Under *Brady v. Maryland*, suppression of material evidence favorable to the accused is a violation of due process.[68]  However, evidence is material "only if

---

[65]    *Capellan*, 975 F.2d at 70.

[66]    The fifth ground of Wilson's petition – that "material evidence adduced at trial was procured in violation" of his constitutional rights, is simply a rehashing of the Fourth Amendment claims.  Therefore, it is also denied.

[67]    *See* Pet. Mem. at 8.

[68]    *See* 373 U.S. 83, 87 (1963).

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[69]  Both the trial court, in its rulings on Wilson's section 330.30 and 440.10 motions, and the Appellate Division determined that Wilson's *Brady* violation claim was without merit.[70]

Those rulings deserve deference because Wilson has failed to rebut the factual findings on which they were premised with clear and convincing evidence.[71]  In fact, Wilson's claim is premised on wild speculation, rejected by the state courts, about the meaning of the printout, which is essentially a series of times and codes, some of which are discernible as license plate numbers.[72]  In a nutshell, Wilson theorizes that in order to run searches of his license and registration within a twenty-two second time span, as reflected on the printout, the officers must have needed Wilson's physical driver's license, which only he could have provided by complying with the officers' request for it.  Offering no basis for his speculation, Wilson fails to grasp the reality, addressed by the state courts, that using the

---

[69]     *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[70]     *See Wilson*, 82 A.D.3d at 800.

[71]     *See* 28 U.S.C. § 2254(e)(1).

[72]     *See* NYSPIN Printout, Ex. W to Opp. Mem.

NYSPIN system, an officer can check the status of a driver's license of a registered

owner of an observed vehicle based solely upon the license plate number of that

vehicle.[73]  If anything, the printout merely corroborates the police officers'

testimony about the circumstances surrounding the stop:  that in twenty-two

seconds, parked behind Wilson's vehicle, the officers checked the vehicle's

registration based on their ability to read his license plate number, and then

checked the driver's license status of the registered owner, in that order.  There is

nothing on the printout that indicates that the police officers manually entered his

driver's license number into their computer system using Wilson's physical

license, or that Wilson complied with the officers' request to provide them with his

license.

   Consistent with the state courts' rulings, the printout is hardly

"material" evidence because there is no "reasonable possibility" that its disclosure

would have affected the verdict.[74]  Wilson's *Brady* claim is therefore rejected.

### 3.  Admitting Evidence of Uncharged Crimes (Ground 2)

Wilson complains that the trial court's admission of evidence of

---

[73]  *See* Opp. Mem. at 18.

[74]  *Bagley*, 473 U.S. at 682.

"uncharged crimes" deprived him of a fair trial.[75]   His Amended Petition primarily

contests two evidentiary rulings:  (1) that the prosecution could elicit testimony

that there was a court-ordered GPS device installed on Wilson's car (though the

court prohibited testimony regarding the underlying burglaries that served as

probable cause for the issuance of the warrant), and (2) that a bent American

Automobile Association card ("AAA card") contained within Wilson's wallet,

which was admitted into evidence without objection, could be published to the jury

with the limiting instruction that the prosecution could not highlight it as a

burglar's tool.[76]

Wilson's claim was properly dismissed by the Appellate Division on

state law grounds, and the evidentiary rulings did not deprive him of a fair trial.

Evidence offered to contextualize the GPS device merely "complete[d] the

narrative of the episode" as permitted under New York law and clearly established

Supreme Court precedent.[77]   And the prosecution, burdened with proving each

element of the alleged burglary, properly relied on the AAA card as evidence not

of an uncharged crime, but of the burglary at issue in the case.  Finally, even

---

[75]     Pet. Mem. at 9.

[76]     *See* Opp. Mem. at 21-22.

[77]     *People v. Till*, 87 N.Y.2d 835, 837 (1995); *Estelle*, 502 U.S. at 75
(noting that evidence of uncharged crimes is admissible in certain circumstances).

assuming the evidentiary rulings were erroneous, they could not be said to have deprived Wilson of a fair trial in light of the additional, overwhelming evidence against him.

Based on the foregoing, Wilson has failed to demonstrate a constitutional basis for relief, or that the Appellate Division's ruling was an unreasonable application of Supreme Court precedent. Thus, Wilson's claim is rejected.

### 5.     The Jurisdiction of the Arrest (Ground 4)

Wilson also argues that the Greenburgh police department did not have the authority to arrest him outside of its geographical jurisdiction. This claim fails for several reasons. *First*, it is procedurally barred because, as the Appellate Division noted, it was not preserved for appeal.[78] This fact alone constitutes an independent and adequate state ground for refusing to review the claim.[79] *Second*, the statutory authority of the officers to arrest Wilson is a state law question not ripe for habeas review.[80] *Third*, as the Appellate Division also ruled, the claim

---

[78]     *See Wilson*, 82 A.D.3d at 800.

[79]     *See Coleman*, 501 U.S. at 730.

[80]     *See Estelle*, 502 U.S. at 67-68.

plainly lacks merit.[81]  Each of these reasons independently sinks Wilson's claim, which is therefore rejected.

## V.    CONCLUSION

For the foregoing reasons, the Amended Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[82]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[83]  Wilson has made no showing.  Thus, I decline to grant a COA.  The Clerk of the Court is directed to close the Amended Petition and this

---

[81]     *See Wilson*, 82 A.D.3d at 800.  Indeed, under CPL § 140.10(3), "[a] police officer may arrest a person for a crime . . . whether or not such a crime was committed within the geographical area of such police officer's employment, and he may make such arrest within the state, regardless of the situs of the commission of the crime."

[82]     28 U.S.C. § 2253(c)(2).

[83]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 17, 2015

**-Appearances-**

**Petitioner (Pro Se):**

Reginald Wilson #07-A-3909
Downstate Correctional Facility
Box F
Red Schoolhouse Road
Fishkill, NY 12524


**For Respondent:**

Lisa M. Denig
Assistant District Attorney
Westchester District Attorney's Office
111 Dr. Martin L. King, Jr. Boulevard
White Plains, NY 10601
(914) 995-4457